The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to give their attention, for the Court is now sitting. God save the United States and this Honorable Court. This is Case 21-1346, Jane Roe v. United States of America. Thank you. Good morning, Counsel. I'm glad we were able to so quickly land on a date that we could all gather, so I appreciate that. We are ready to hear from the appellant. Thank you, Your Honor. May it please the Court, I would like to reserve 10 minutes for rebuttal. Jane Roe alleges that she was constructively discharged by a sequence of sexual harassment, deliberate indifference, and fundamental unfairness in the way officials handled her complaint. She brought this lawsuit because even federal judiciary employees have a constitutional right to fundamentally fair process for resolving discrimination claims. For two reasons, appellee's response lacks any basis in the law. First, appellees ask this court to disregard the their own facts. This court cannot do that on a motion to dismiss. Second, appellees ask this court to embrace a judicial exceptionalism for unconstitutional discrimination that does not apply to any other branch of government. That is wrong. The judiciary must live by the same constitutional principles it applies to other government workplaces. Under those constitutional principles, Roe has stated claims that entitle her to relief, including reinstatement to a free of discrimination. I'm happy to address any questions. Excuse me, counsel. Did you seek reinstatement in your complaint? Yes, we sought reinstatement below. It was very clear that she was seeking equitable relief, declaratory and injunctive relief. And the specific wording of the complaint, reinstatement, appears. And the idea is that there would be equitable relief as a substitute for reinstatement if reinstatement would be implausible, which at that moment, having been constructively discharged and pushed out of a hostile work environment, it would have been quite weird and disingenuous for her to say what I want is reinstatement right now. She was seeking equitable relief in the form of reinstatement and if not reinstatement, then front pay as a substitute. I thought then what we were left with as far as equitable relief was front pay. What we were left with, I believe, Your Honor, is a request for equitable relief that could have been front pay, but that really the district court would have the duty to fashion the appropriate equitable relief based on all of the facts that were found. Thank you. I got the facts are a little different now than they were then now that the defender has been replaced. Is that correct? That is correct. The facts are different then. And under Rule 54C, a district court is supposed to take into account the facts and fashion relief, even if there was a request that was not made specifically in the complaint. She did ask for front pay in the reinstatement. And at that point, that was the feasible relief that she could imagine. But now that the facts have changed, she does specifically declare that she would accept reinstatement as the form of equitable relief. I've got a question about the individual capacity claims. Am I correct in assuming that her client's individual capacity claims depend on us finding that she either has a Bivens cause of action, or she has a conspiracy cause of action under 42 USC Section 1985? Yes. One of those, or there's no individual capacity claims. Am I right? That is correct, Your Honor. Those are for damages, remedies against the individual capacity defendants. But the majority of her complaint is about official capacity defendants and officials against whom she is asserting constitutional claims and asking for equitable relief. And so the Bivens issue doesn't come into play for those defendants. It's really just the very few individual capacity defendants. It's a very narrow band of the complaint. Okay. I gather there's a substantial issue of whether she has a right to even pursue a Bivens claim in this case. Well, we believe that it is straightforwardly a Bivens claim that would proceed under the authority of Davis v. Passman. So, and again, this is just for the damages claims, not for the many equitable claims that she has asserted. So isn't Davis v. Passman really very different from our case? And haven't we been told by the very narrowly constructed and construed? Davis v. Passman held that there was a Bivens claim for sex discrimination by a federal employee who was not covered by Title VII. That very clearly covers judiciary employees. Here we have different defendants and we have very different relief sought. And the basis for the one person against another. Well, Your Honor, Davis v. Passman is, the wording of Davis v. Passman is very clear that it's about federal employees who are not covered by Title VII. And the differences, mainly it's sex discrimination. It's an equal protection claim. That is what Jane Roe is asserting. The fact that the person was a member of Congress and this is about judiciary officials, that's neither here nor there, mainly because the language of Davis is extremely clear. And the fact that the Supreme Court has said that you do have to look at the specific context. Well, we believe that this context is not a new context. It is explicitly covered under the Davis v. Passman theory. And I do think that if anything, it would be a modest extension and special factors would not apply. And I understand you to just say that you are alleging a sex discrimination claim. We are alleging sex discrimination because sexual harassment and deliberate indifference to sexual harassment is a form of sex discrimination under the Constitution. And also there are direct sex discrimination claims here as well. I well, I guess I was having trouble reading the complaint as a direct sex discrimination claim. I understand your allegation of deliberate indifference. And I also understand your allegation of retaliation. And there's an allegation that the process was defective, as I read the complaint. But I didn't see a direct claim of sexual harassment against either the defender or any of the other defendants for that matter. And of course, you didn't sue the person who was the alleged harasser. So is there a direct claim of sexual harassment in this case? Yes, there is, Your Honor, the direct claim of sexual harassment, of sexual, of sex discrimination is mainly from the idea that the defender himself, when he reacted to the report of sexual harassment, reacted in a sex discriminatory manner, it was deliberately indifferent, but it was also directly sex discriminatory in the way that he treated her in the way that he talked about the way that, that he needed to compromise that with the cheating to compromise with the harasser relying on a sexist stereotype about how a wife should be submissive to her husband, and making clear that she would have to work at her harassers duty station, no matter the outcome of the EDR process. All of that was sufficient to show the discriminatory intent, which has to do with the fact that he was using sexist I think it's very clear under feminist majority versus Hurley, that downplaying sexual harassment and failing to act shows a discriminatory intent, one that is sufficient for establishing the deliberate indifference claim, as well as showing that the defender when he reacted in the way that he did using sexist stereotypes, that would be a form of discrimination. The woman who harassed her was the first assistant, right? That's correct. However, like the defender was maybe under your theory, more deliberately indifferent. And they claim under that, but I mean, she doesn't claim that the defender himself was pursuing her or trying to harass her, was he? Judge Gilman, you are correct. I think that our complaint is very clear that the defender is not accused of sexual harassment in the way that the first assistant would be. The complaint that that is filed in federal court is not about the first assistant sexual harassment. It is about what happened after the sexual harassment was reported. And that includes the defenders reaction to it, his failure to take reasonable steps to address the harassment and then other officials reaction when she filed her EDR complaint. And all of that amounts to both sex discrimination under established theories under the Equal Protection Clause, as well as due process violations under the Fifth Amendment. So the first assistant not being sued here, well, that's because this suit is about the process and the way that the EDR process and the way that the officials reacted to her reporting were discrimination under the Constitution. So again, I think everyone's asking the same question. And I think you're talking discrimination and the questions are, is there a claim of harassment? We are, I think, I think you're not, you're not saying harassment as far as the defendants that you've sued. Is that correct? I think what we're saying is that the defendants that we've sued have not engaged in sexual harassment, but they have engaged in deliberate indifference to sexual harassment, which is very clearly a form of Let me go to the top end of your people you've sued. You sued James Duff as the Director of the Administrative Office and Roslyn Moskoff as the Chair of the Judicial Conference Committee on Judicial Resources. What is your theory of why they should be involved in this suit? Well, Judge Gilman, our theory is not only that she was treated unfairly and discriminatorily once she sued, but the point is that the processes themselves as laid out in the EDR plan that she was adjudicated under, that those processes were very, just grossly unfair, that they countenanced certain conflicts of interest that were structural and made it impossible for her to have a fair adjudication. And that those policies were set, not by merely the people, the officials who handled her complaint, but by officials in the judiciary who set judiciary policy. So the Fourth Circuit Judicial Council that adopted the EDR plan for the First Circuit, as well as officials of the Judicial Conference, the Judicial Conference that sets the model EDR plan upon which the Fourth Circuit plan was based. And then in the AO, officials not only, some of them were directly involved in her complaint, that they were actually running parts of her complaint. But before that, there was an issue of policy that I think that the AO director and people in the AO would be in charge of implementing. And so there are charges that they implemented the policy in an unfair manner. So that goes more to your, those two people probably go more to your facial attack, I suppose. Some of them haven't had a role in the facial attack, but the entity defendants that you mentioned earlier, as well as the officials in the entity, were, are in the suit because they're involved in the setting of the judiciary policy, mainly the EDR process, both the model. But is that really the problem here as it played out? The policy, one could argue is fine. It's just the way it was applied or misapplied. Is that a valid point? Judge Brusco, with respect, I would say that there were many problems with the way it was applied. But we do, we do claim that the process as it was written on paper, was also not fine in the sense, especially that the circuit executive and the chief judge had key roles in handling the process. And we do note that in 2020, the new judiciary policy for the EDR plan prohibits those conflicts of interest and says that that should never happen. But in the plan that... Go ahead. I'm sorry. Go ahead. In the plan that, thank you, Your Honor, in the plan that Jane Roe was under, which is the 2013 plan, on its face, it had those structural conflicts of interest. And then also she was told that despite what the plan said, the reality was that the chief judge would not be able to order remedies for her. So you could treat that as a facial issue in that they were telling her that no matter what, she wouldn't get the remedies. Or you could treat it as applied in that in that instance, she was being told that no remedies would be forthcoming because of the lack of authority, allegedly, that the officials had. Well, you're suing those individuals, Mr. Doss, the chair of the committee, the judicial counsel, you're suing them individually, right? The individual capacity defendants are only the general counsel and the John Does in the general counsel's office. And then also three individual defendants who we have also sued in their official capacity, the chief judge, the circuit executive, and the AO director. No, the defender. Oh, sorry, the defender. You're right. What are the individual... What do you allege that the chief judge did that would rise the level of individual capacity claims? Well, for one thing, the main thing was that the defender was an accused person in this proceeding. However, the defender, also being the head of the office, was put in charge of representing the employing office. Now, that's a clear conflict of interest. And the policy actually allows a claimant to ask for disqualification for an involved person. The defender was clearly an involved person, the chief judge did not disqualify the defender. And as a result, the defender was able to do things like pick the and appoint the investigator for the case, and then also to be the representative of the employing office in the mediation process, and the rest of the Title 10 EDR plan. So to hold the chief judge liable, don't you have to then extend Bivens to administration of the EDR plan? Isn't that an extension of Bivens? Well, I think that first of all, the equitable claim, the non-Bivens equitable claim, official capacity claim is the one that I think that I was And there, we would say that under the Bivens authority of Davis v. Passman, this is the claim of sex discrimination that we would have under the Davis v. Passman theory. So I do not think that it is an extension. Perhaps, you know, there are many facts that you could focus on to say, oh, this case is different from that case. But the overall, the overarching theory of Davis v. Passman is about sex discrimination and equal protection. And it's about employees who are not covered by Title VII, which clearly the defendants here were not. You know, you've got this overall attack, of course, on the whole EDR plan. But if the defender, for example, had immediately said, hey, first send her to a different area or discipline you, that would have solved the problem right there, wouldn't it? I mean, the problem was, under your allegations, the defender himself didn't take effective action to protect you. That was one of the things that happened here. If the defender had taken effective action, perhaps she would not even have to report formally. Perhaps she would not have had to, but she did. And when she did report formally, she reported both the defender and the first assistant. Her EDR complaint was about both of them. And she was told by the Fair Equal Opportunity Officer that the behavior that they engaged in was textbook sex discrimination and sexual harassment. And so... And I guess my thought is, it seems to me to show that your real claim is that as applied, this EDR plan was not effective, didn't help your client like it should have. But I'm not sure it impugns the entire EDR plan as being unconstitutional. Well, it may impugn the way that it was applied in this situation, but the aspects of the EDR plan, I think that we have clearly alleged, do violate due process and equal protection have to do with the way in which the EDR plan actually was laid out. And by following it, it would be a structural problem, and especially the conflict of interest having to do with the circuit executive and the chief judge. And their roles. So it's really both, Your Honor. It's really not one or the other. If I can help you understand that more clearly, because I think that you're not... Possibly you're not quite understanding that we are saying that the facial aspects of the plan, especially having to do with conflict of interest, those are built in. They're baked in, no matter who is doing the implementing and what the implementation is. Well, no, because part of it is you can request that these people be recused. It's like you asked that the defender be recused. We did ask the defender be recused, and that did not occur. Oh, it didn't, but I'm saying that it could have occurred under this plan. In fact, you could have asked for the chief judge to be recused. Well, under this plan, I actually think it's quite unreasonable to expect Jane Roe, an employee in the Fourth Circuit, in the federal judiciary, who's actually saying, my accused person is in charge of this, and I want that person not to be involved. The chief judge doesn't recuse that person. What would make her think that the chief judge would recuse himself, given that that was what was happening and the circuit executive? They were both involved in the alleged violation, that they had approved the various employment decisions of the defender, and they were the ones who were running the show. And I don't think that it really is unreasonable to say the chief judge should have been requested to recuse, when he himself would not recuse the accused person from being a decision maker. We are out of time on this side of the argument. You wanted rebuttal time. I think we'll give both sides five minutes so that you'll have rebuttal, and we'll give five minutes to the appellee. Thank you. We're ready to hear from the appellee. Thank you, Your Honor. May I please support Thomas Byron from the Department of Justice on behalf of the defendants, with the exception of Mr. Martinez in his individual capacity, whose counsel, Ms. Fainhower, will present arguments separately. I want to start by emphasizing that the Fourth Circuit's EDR plan, like the model EDR plan and the similar plans adopted in other courts, provides a comprehensive, meaningful remedy for employees of the judicial branch to report and seek relief from misconduct, including sexual harassment. That's true generally, and it's true in this case in particular. The plaintiff's legal arguments here would require the court to go well beyond any existing precedent. We're not aware of any appellate decision that allows a judicial branch employee to bring a lawsuit in federal district court to litigate claims of workplace misconduct against official capacity or individual capacity defendants. Those kinds of claims have been routinely and consistently rejected, and they should be here as well. The court at this stage, like the district court at the 12 v. 6 stage, is obliged to scrutinize the plausible, well-pleaded allegations in the complaint, not the description of those allegations in the briefs or an argument, to determine whether each claim against each defendant, official capacity and individual capacity, states a claim and is within the jurisdiction of the federal courts. The plaintiff's complaint here does not meet those standards, and I'd be happy to address each of the claims as we go through them, but I want to emphasize that each claim must be supported by plausible, factual allegations, not conclusory statements, and the complaint falls well short of that requirement. Counsel, as far as the official capacity defendants, don't we have a non-statutory review exception here? Your Honor, the Larson and Dugan exception permits injunctive relief or declaratory judgments to remedy an ongoing violation of the Constitution by an official capacity defendant. It's the federal equivalent of ex parte young, is what the courts have said. The plaintiff here is not seeking to remedy an ongoing constitutional violation by means of an injunction. Instead, she's articulated what she says is relief that would fall on the one side of the line between historically equity and law. That's not the scope of the Larson and Dugan exception. You're saying there is no option here for the plaintiff for equitable relief? Judge Briscoe, I think not within the scope of Larson and Dugan, which again requires ongoing constitutional violation by a federal official. That's not what's been alleged here. She alleges a constructive discharge. There's no doubt that that is the kind of standing, that's after all what DeCoco says, the past harm is the kind of standing. DeCoco doesn't say, as she suggests in the reply brief, that that's an ongoing constitutional violation, and that's what would be required under Larson and Dugan. But even if there were a claim available under Larson and Dugan, the only available relief would be injunction or declaratory judgment. She's not identified what kind of scope of injunction would relieve any ongoing constitutional violation here. That's key. Do you think reinstatement or front pay are unavailable? I think front pay is unavailable, Judge Briscoe. Reinstatement might be a closer question if it could be cast as an injunction to relieve an ongoing constitutional violation. I don't think it can, but I think front pay is clearly, in the context of this case, a damages remedy, just as the Third Circuit pointed out in a similar context in the 1983 claim. There are cases all across the country, including some cases in the Fourth Circuit, that do refer to front pay in lieu of reinstatement as an equitable remedy. Yes, Judge Moyes, certainly right. Sorry. Well, so why is that not something that could be ordered by way of injunction? A couple of reasons. I mean, first of all, it goes well beyond the scope of an injunction to cease an unconstitutional action by a federal official. But more important, many of those cases actually look at the line between Title VII's original formulation of reinstatement and other remedies, and then the 1991 amendment to Title VII, which imposed a statutory damages cap and said, in the context of that statutory distinction, the front pay is on the line of the remedies available originally in 1964. So, and that it's historically on the side of the line, that doesn't answer the question again of whether Larson and Dugan contemplate that kind of relief as within the scope of what we would think of as an ex parte Young equivalent for the federal government. I do want to emphasize that even if there is an equitable remedy available here, plaintiff has not demonstrated factual allegations that state a claim for relief. And I want to emphasize that for several reasons. First, turning to the due process claim, the EDR plan in place in the Fourth Circuit, the 2018 plan is the relevant one that governed the proceedings here. That plan is comprehensive, thorough, and offers meaningful relief, including as the... Well, well, it might look fine on paper, but don't we have to look at the reality of how it was applied here? And don't you have to admit that things went off the rail early in this? I mean, timelines were not observed at all, for instance? No, Judge Briscoe, I don't think so. It's certainly true that, you know, it took longer than it often will take to complete an investigation. That doesn't mean it's a constitutional violation. That doesn't mean that under the Matthews against Eldridge framework, the states have claimed for a violation of the Fifth Amendment due process guarantee. That's the question the plaintiff has posed here. Is a six month period from the initiation of an investigation to its conclusion a violation of the Constitution? That bare question is not sufficient to state a claim under the Matthews test and in plain sights to no case law that suggests that it would be. Similarly, she says that she was entitled to an extension of her period for counseling and got a shorter extension than she asked for. That's one of the bases for her claims against Chief Judge Gregory. That's not a constitutional violation under the due process guarantee either. Similarly, you know, none of the allegations in her complaint about what she says she was told by different people amount to a conclusion, a plausible allegation, I should say, that the framework, the remedies available in this EDR plan were actually not going to be available to her. That was her subjective belief. She calls it in her complaint a reasonable belief, but that's a conclusory legal conclusion. What if she was told that? She claims it wasn't a subjective, I mean, it was subjective because she believed it, but she claims she was told that by at least, as I understand, at least two different sources, that the judiciary has no control over the federal public defender. They couldn't afford a relief to her. Judge Moy, that's actually not what the complaint says, and I'm happy to turn to the allegations in the complaint to point out what it says. She says that, if you give me just a moment to find my notes here. She says she was told that the, I'm not finding the specific reference, but the allegation about what she was told by the FEOO at the Administrative Office of U.S. Courts is that she didn't, the FEOO didn't believe that there had been a previous instance where a sexual harassment claim, to her knowledge, had been successful. That's not the same as saying that no relief would be available in this case. Similarly, the JIO, who was later at the AO, sorry for all of the abbreviations here, she says, the complaint says, told her that she didn't believe that particular remedy, that is the removal of the federal defender himself, as an outcome of the complaint process under Chapter 10, would be available because of statutory protections imposed by Congress. That then poses the question under the complaint, is it a violation of the Constitution for Congress to have provided statutory protections on removal and potentially limited? Again, we don't know because she didn't proceed through the Chapter 10 process, didn't file a complaint at all. In fact, we don't know what relief would have been available here. The plan itself provides for a wide range of meaningful relief, including reinstatement, including back pay. She did not give the process an opportunity to play out. She withdrew from that Chapter 10 process without filing a complaint. Therefore, the only question presented is whether the presumed unavailability of removal as a possible remedy is unconstitutional, is a violation of the Fifth Amendment. And again, there's no case law to support that concept. Are you contending that the plan was followed by the defendants? Judge Briscoe, we are contending that the allegations in the complaint, which, of course, is what we're looking at here at the 12 v. 6 stage, do not demonstrate that there was a constitutional violation. That's the question of 12 v. 6. The question about whether the plan was followed would only really be at issue if there were a judicial remedy to test that question. And there's no support for the idea that this... Do you think the plan creates a property right? No, Judge Briscoe, clearly does not. And I'm glad you asked that. What's the purpose of the plan then? The purpose of the plan is to provide a parallel remedy similar to Title VII and other non-discrimination statutes. So if the plan is not applied properly, is there relief? There is relief, Judge Briscoe. And one of the reasons we know that is because this plaintiff did not allow the plan to play out. She didn't file a complaint under Chapter 10. The question whether the counseling stage, the mediation stage, went exactly according to the way either the plaintiff would have liked it or the way that even Chief Judge Greger or the circuit executive would have liked it to play out is not ultimately the question here. The question is whether meaningful relief under Matthews v. Eldridge and Fifth Amendment's guarantee of due process protection was available to this plaintiff and others. And many courts have held. I'll just point to a couple in the CSRA context because it's particularly relevant. Semper and Dodson make clear that the remedy here under the EDR plan is meaningful, is consistent, and is... But Semper doesn't help you, does it? It does. Because Semper says, yes, the plan is a good thing. But if the plan is not followed, then the plaintiff can have relief. I don't think that's the relevant holding of Semper, Your Honor. Semper holds that because the plan contemplates a hearing before a judicial officer, and it also contemplates, after all, a review process, essentially an appeal before the Judicial Council, that is sufficient under the Supreme Court's 2012 decision in, and I apologize, it's not coming to mind at the moment. That is sufficient to preclude the kind of constitutional equitable claim that the plaintiff is bringing here. It's not an as-applied inquiry. It is a question about the availability of the jurisdiction, in fact, to hear this kind of constitutional claim. And the plaintiff is not entitled to that because the Congress has made clear that no cause of action exists. The question you asked about... When you're saying, now you're talking about the civil right, the CSR, is that what you're talking about? The CSRA, Your Honor, yes, that was what Semper... Is that what you say Congress has not allowed for a remedy? That's what Semper addressed, Your Honor, and that's why I was addressing that in light of your question. I think that is exactly what the Third Circuit held, consistent with what the Second Circuit held in Dotson. And in fact, the Ninth Circuit in the AFGE case, the plaintiff pointed to explicitly distinguished Dotson and was decided before Semper and is not inconsistent with those cases for that reason. So I do want to turn to the property interest question you asked, Judge Briscoe. I mean, I think the fundamental question is whether, in a corollary context, Title VII as a statutory matter creates a constitutional property interest in continued employment for plaintiffs who are at-will employees. Because after all, the EDR plan is effectively a parallel remedy intended to provide relief similar to Title VII and other non-discrimination statutes. It says so in the terms of... Counsel, I don't think plaintiff is asserting she had any right of continuing employment. I don't think she's fussing with the fact that she was an at-will employee, but she is saying that, look, the EDR plan gave her a property interest in not being sexually harassed. And the plan clearly is all designed to prevent sexual harassment. And so why is that? Why does she not have a property interest per the EDR plan that she can pursue under due process and equal protection grounds? Judge Gilman, I think the answer, the reason she doesn't have a property interest under the EDR plan is precisely the same as why she doesn't have a property interest or why another at-will employee wouldn't have a property interest, a constitutional property interest under a statute like Title VII, which guarantees a right to non-discrimination. The fact is that Congress in Title VII provided a scope for the remedy. And the remedy here is the question, not the property interest. The cases like Loudermill, Page, Perry, and on the other side, of course, Roth, the Supreme Court has emphasized that at-will employees who don't have a right to tenure or similar protection do not have a property interest in litigating under the Due Process Clause claims related to their employment. Congress creates procedural rights and substantive rights and statutes like Title VII, the ADA, etc. Those are available to vindicate those rights. That doesn't mean that the Constitution itself creates a right enforceable in federal court, apart from any scope of a cause of action created or limited by Congress. And that's ultimately the question presented here. Does the EDR plan create a property right cognizable under the Due Process Clause wholly apart, in a vacuum, wholly apart from what Congress has said in CSRA and Title VII and other statutes? And that's in part why I mentioned temporary, because the CSRA is evidence that Congress did not want to permit a full floating claim of constitutional violation such as this. And there's good reason to conclude that several courts have held it. That's true with respect to both the official capacity and even, at least as clearly, with respect to the individual capacity claims. Diven's claims have consistently been rejected on the grounds that the CSRA is an alternative remedy imposed by Congress and that, in fact, in this context, in context of judiciary employees, that the EDR plans are themselves an alternative remedy that precludes the expansion of Bivens. A plaintiff's counsel in the opening argument suggested that Davis against Passman should be read broadly. But the Supreme Court in Abbasi rejected that idea very clearly. And this court in Tuncos made clear that even a modest extension is an extension, as the Supreme Court said in Abbasi, and that the different defendants, the claim in that case was about whether ICE officials, as opposed to narcotics officers, could be subject to a Bivens claim. The claims were otherwise quite similar, after all, and the argument in that case, the briefing in that case, addressed that focus. It was more than sufficient, this court held, to differentiate it from Bivens, just as in this case. When you look back at Semper, what was the ultimate conclusion of the case? Wasn't the employer, the employee there given relief? Your Honor, I think the key that we want to emphasize here is that the Semper case, the Third Circuit in Semper, like the Second Circuit in Dotson, made clear that these kinds of free-floating constitutional claims are precluded where the EDR plan creates an available remedy. And in fact, that Congress intended that. I don't think that there is... I mean, the Senate in Semper says that's fine, but if the remedy, if the plan, if whatever is provided to the employee is not followed, then there is no remedy. And that's a problem, is it not? No, Your Honor. In fact, I think that's not the appropriate framework for deciding the question as a jurisdictional matter, whether the CSRA precludes a constitutional claim. It's not a question of whether a particular individual received any particular relief, but instead whether Congress intended to preclude a claim such as this one. And that's what both Dotson and Semper and other cases have held. There is no remedy. So the plan is not enforceable, is what you're saying. It's not enforceable in federal district court, Judge Moore. How is it enforceable, then? It's enforceable within the framework of the EDR plan process itself. So, and this is what... But if you assume that the plan, if you assume the process totally goes off the rails. And if you have a situation, as alleged by Roe in this case, where she complains, goes through the process and then is subjected to ongoing retaliation by the public defender, is the argument why you just have to live with that for a couple of years and hope the chief judge or the judicial counsel will remedy that? Is that the answer? Judge Moore, I think the answer is that yes, the process that's available is the EDR plan's process. First of all, I want to go back and reiterate that the complaints allegations in this case, the plausible allegations, not the conclusory assertions, do not demonstrate that the process went off the rails here. They do not demonstrate futility. They do not demonstrate that she could not have received meaningful relief in this case. All they demonstrate is that she believed that it would be futile. That's not sufficient. And that's not a basis for providing a district court do-over in the context of a claim like this for workplace misconduct in the judicial branch. No court has allowed that. And we don't think it's appropriate for this court to do so on the basis of the allegations in this complaint either. I do want to reiterate that the bid... Let me ask you a question. You talked about the do-over. What actually happened to her Chapter 10 complaint? She never filed one, Judge Moy, and the allegations in the complaint make that clear. She proceeded through the first two steps, the counseling stage and mediation stage, but declined to initiate the third step of the Chapter 10 proceeding, which would be filing a complaint. But there is some email correspondence after she left the office indicating that it was still an open matter. And the circuit executive said that the investigative report had been shared with the defender, disciplinary action was taken, and so on. What did they mean when they said it was still an open matter? Judge Moy, that referred to the Chapter 9 investigation, the report of misconduct. And I want to clarify that the report was not shared. The allegation is not that the report was shared with the defender, but that the email from the circuit executive explaining that disciplinary action was taken at the conclusion of the investigation report process under Chapter 9 indicated that the chief judge in that case in the Fourth Circuit as a whole took the concerns seriously and undertook a comprehensive and thorough investigation resulting in disciplinary action. That's what Chapter 9 is intended to do. The report, after all, under Chapter 9 is not ordinarily shared with a person who files the report of misconduct. That person could be anyone. It could be a colleague, a peer. Was there a report made in this case? Following a complaint made by Roe? The report made by Roe under Chapter 9? Yes, Judge Briscoe. There was an investigation and a report completed that led to disciplinary action. Well, no, the investigation that was prompted by her complaint, her Chapter 9 report, under the EDR, there was an investigation and a report, right? Yes, Judge Briscoe, that's right. So was that report ever shared with Roe? No, Your Honor, and that's because it was a chapter at the Chapter 9 stage. It's a report of misconduct, not a complaint, not an adversarial complaint. If she had filed a Chapter 10 complaint, that report would have been made available to her and she could have called witnesses, introduced other evidence. That's the Chapter 10 adversary process that she chose not to undertake. Well, she says that she chose not to do it because she felt that it was going to be futile, right? That she was, in effect, being coerced, effectively, constructively discharged because she was told that filing a formal complaint would do her no good, that she better take the Fourth Circuit clerkship. Judge Gilman, I don't think that's a fair reading of the plausible factual allegations in the complaint. Again, I urge the court to return to the allegations in the complaint and scrutinize them carefully because I don't think they support that kind of claim. But it's also true that she could have filed a claim under Chapter 10 for constructive discharge after leaving the office, and she chose not to do that as well. The plan makes that clear in the description of employee, which includes a former employee. I see my time is almost up. I just want to reiterate that the individual capacity claims go well beyond what Bivens in Abbasi permits, and the conspiracy claims under the statute are not sufficiently supported by factual allegations, as we've explained, and would in any event, if I may complete the point, Your Honor, are barred by both qualified immunity and qualified immunity with respect to the intracorporate conspiracy doctrine as the court held in Abbasi itself. And we urge the court to look back at that analysis. Thank you, Your Honor. We urge the court to affirm. Good morning, Your Honors. Thank you. May it please the court. I represent Mr. Martinez in his individual capacity only in this matter, and just wanted to follow up on a few points as we move through. And I think this didn't come out quite yet, but at the district court level, the plaintiff was trying to make Title VII attached to the Constitution. And the district court judge rightly declared that that was not how it needed to work. Now there's an allegation of deliberate indifference, and this deliberate indifference idea is taken from Title IX context and not in the employment context, which I think is an important point, especially on the Bivens claim, because it shows that this is indeed a new context. There are meaningful comprehensive remedies here under the EDR plan. Had Ms. Rowe filed her Chapter 10 complaint, she would have had the opportunity to fight her constructive discharge, make those allegations. But she did abandon that process and did not move forward with it. I believe with the deliberate indifference issue, it's just simply inapplicable in this context and certainly is not something that would have been clearly established since that case, even the case that's cited under Title IX, wasn't decided until December of 2018. And of course, all of this happened prior to that, except for the actual resignation of Ms. Rowe. So I wanted to point out those few things. Also, you're correct, Your Honors, in that the allegations against Mr. Martinez are retaliation claims. The allegations are not sex discrimination claims. He's not being accused of sexual harassment. In fact, he sat down with, if you look at the complaint, he sat down with Ms. Rowe and specifically asked her if she was alleging sexual harassment and she disavowed that. She said she was not. Can't you allege sexual harassment if you say to the defender, I am in a situation here in my workplace where I am being harassed and discriminated against? He does nothing, in fact, puts her back in the same area and work area as her harasser. Doesn't that action by him result in sexual discrimination? Not necessarily, Your Honor, under the Constitution. That is a Title VII concept and that would be, you know, for an official capacity situation because, of course, under Title VII, individuals can't be held individually liable. So you're saying she has no property right to work in a workplace that is free of sexual discrimination? I'm not saying that. I'm not prepared on the due process issues because that doesn't have anything to do with the individual claims. What she did have processed, what she did have was the EDR plan where she could have gone. And when it was clear that she was alleging sexual harassment, the first thing that Mr. Martinez did was report it under the EDR plan like he was supposed to and like he had to. And I believe that the allegations in the complaint don't exactly lay out that he was, that she was put back with her harasser, et cetera, et cetera. There was maybe a week or so delay and then she was on telework working from home at, and you'll see in the complaint that that was at her request. So she wasn't put back in the same location with her harasser after there was a formal harassment complaint made. I'm sorry, you're representing Mr. Martinez in the claim against him in his individual capacity, is that right? Yes, your honor. We hold that if we decide that Bivens doesn't apply in this situation, you're fine, you're out of here, right? I think that's correct, your honor. Okay, just wanted to clarify, thank you. Anyway, so we believe that it should be, the lower court's decision should be affirmed and that this is the appropriate time to look at Bivens if the court is so inclined to do. It's a qualified immunity issue as well, which is supposed to be heard at the very first possible time under all the various case law. So we do believe that Bivens would take the individual capacity claims against my client and the other individual capacities clients out of the case. Thank you, counsel. Thank you. We're ready for the rebuttal. Thank you, your honor. I think one of the first things to really note here is that appellees are falsely claiming that Roe voluntarily withdrew her EDR complaint. And they're even saying completely falsely that she never filed anything under Chapter 10. She did, she filed Chapter 9 and Chapter 10 simultaneously. And perhaps the most central fact alleged in this complaint is the lack of voluntariness in how she left the office. The constructive discharge, which included coercion to forego the final step of Chapter 10. So not only is it completely untrue that she never filed anything under Chapter 10, it is also untrue that she voluntarily withdrew that. I am not sure how the defendants can claim that she didn't even file Chapter 10 when they were the ones that allegedly forced her to resign and withdraw her Chapter 10 complaint. That is central to the allegations of the complaint. And they do not get to make their own facts here. Tell us precisely how the complaint says she was forced to withdraw her Chapter 10 complaint. I understand that Mr. Byron is saying that you should read the complaint. I also urge you to read the complaint. The complaint says very clearly she was told by both the Chief Circuit Mediator and the Judicial Integrity Officer things that amounted to, and I'll tell you the exact language, an Article 3 judge does not have the authority to manage an FDO, which is, I don't know what that means other than that Chief Judge Gregory would not be managing an FDO, as in would not be giving her remedies. The Chief Judge would not meddle in a defender office. And then also both officials said that the defender is, quote, the decision maker. And so what would that mean other than that the Chief Judge would not be giving her remedies? And if the defender, who was the accused person, was going to be the decision maker, I think that it is extremely reasonable, and not just reasonable, not just subjective, but objectively on the facts, on the alleged facts, on the face of the complaint, it was futile. And that these are facts alleging futility that I think that the appellees are urging you not to look at. And in fact, you have to take these alleged facts as true for the purposes of a motion to dismiss. At a minimum, the defender clearly reacted in a deliberately indifferent manner. Our claim has always been based on the Fifth Amendment and conscious failure to act. The fact that courts are looking to Title VII or Title IX for guidance in constitutional law does not mean that the claim being alleged is a statutory claim under Title VII or Title IX. It is a claim that is established in the Fourth Circuit under equal protection doctrine. And so to the extent that Feminist Majority Foundation look to Title IX for guidance, that is a very common practice, as your honors understand, in construing constitutional claims, that you would sometimes look at the standards that have been promulgated under Title IX or Title VII. And many courts have held that a failure to act on sexual harassment violates a clearly established right under the Constitution. Judge Briscoe, you are right about Semper. We do have a right to judicial review. There has to be judicial review of an equitable claim. I think the appellees are doing you a disservice in muddling the equitable claim and the CSRA bar and the Bivens claim. If CSRA actually bars equitable relief, then there is a real question of constitutionality of that statute. And in order to avoid that constitutional question, you must find that an individual has the right to judicial review of equitable claims. And so the quote from Semper is that a federal employee who could not pursue a meaningful relief through a remedial plan that includes some measure of meaningful judicial review, has the right to seek equitable and declaratory relief for alleged constitutional violations in a federal question action filed pursuant to 1331. That is exactly what is happening here. Jane Rowe has alleged a property interest. The appellees are at the same time saying the EDR plan is excellent, extolling its virtues and saying that it really guarantees judiciary employees everything they need. And at the same time, they're saying it's not a legitimate entitlement under the Constitution. That doesn't make sense. It's totally contradictory. The EDR plan creates a legitimate entitlement in judiciary employees to a workplace that is free of sexual harassment and sex discrimination and other forms of discrimination. And as such, it is a property interest that one can vindicate that has to have proper procedures, basically fair procedures, before it is going to be deprived from the victim. Thank you. Thank you. Thank you, counsel. Thank you all for your arguments this morning. They've been very helpful. The case is submitted. This honorable court stands adjourned. Tina Dye, God Save the United States and this honorable court.
judges: Mary Beck Briscoe, Ronald Lee Gilman, Michael J. Melloy